**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CHARLES JACKSON, | : | MOTION TO VACATE |
| Federal Reg. No. 65797-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:14-CR-52-TWT-JSA-2 |
| | : | |
| UNITED STATES OF | : | CIVIL ACTION NO. |
| AMERICA, | : | 1:16-CV-772-TWT-JSA |
| Respondent. | : | |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Movant Charles Jackson has filed the instant motion to vacate and amended motion to vacate pursuant to 28 U.S.C. § 2255. (Docs. 156, 166). Movant seeks to challenge the constitutionality of his sentences, which were imposed on January 18, 2015, following his guilty plea in the Northern District of Georgia.

I.   Procedural History

On February 18, 2014, Movant and one co-defendant were indicted by a federal grand jury in the Northern District of Georgia and charged with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a), armed postal robbery in violation of 18 U.S.C. § 2114(a), and discharge of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), in connection with the near-fatal shooting and robbery of a postal truck driver on December 20, 2013.

AO 72A
(Rev.8/82)

(Doc. 1).  On March 19, 2014, a superseding indictment was returned against Movant and his co-defendant, which added another co-defendant to the conspiracy and robbery counts and added a fourth count charging Movant with possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (Doc. 32).

On August 5, 2014, Movant entered a guilty plea, pursuant to a negotiated plea agreement, to the charges of armed postal robbery and discharge of a firearm during a crime of violence.[1]  (Docs. 91, 103).[2]  The negotiated plea agreement contains a waiver of Movant's appellate and collateral rights.  (Doc. 91, Attach. 1 at 16, ¶ 31).  On January 7, 2015, Chief U.S. District Judge Thomas W. Thrash, Jr. sentenced Movant to 228 months of imprisonment.  (Docs. 131, 133).[2]  Movant did not file a direct appeal.

Movant filed a handwritten *pro se* motion in this Court on January 27, 2015, asking the Court to re-sentence him.  (Doc. 135).  On April 8, 2015, Judge Thrash

---

[1] The remaining charges against Movant were dismissed as part of the Plea Agreement.  (Doc. 91, Attach. 1 at 5, ¶ 11).

[2] Movant's co-defendants also entered guilty pleas.  (Docs. 95, 100).

[2] Specifically, Movant was sentenced to 108 months for the armed postal robbery conviction and a consecutive 120 months on the firearm discharge conviction.  (Doc. 131).

2

denied the motion because the Court has no authority under Rule 35 to grant the relief Movant requested.[3]  (Doc. 147).

Movant filed the instant § 2255 motion to vacate on March 9, 2016, in which he argues that this Court should "consolidate" both counts upon which he was convicted and impose a new sentence of 180 months of imprisonment based on "recent court decisions" and other mitigating factors (*i.e.*, his age, health, and efforts at rehabilitation).  (Doc. 156).  Movant filed an amended § 2255 motion on August 8, 2016, raising a claim that his sentence is unconstitutional under the Supreme Court's recent decision in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2557 (June 26, 2015).[4]  (Doc. 166).  Movant also claims that his plea was not

---

[3] Under Rule 35 of the Federal Rules of Criminal Procedure, the sentencing court may reduce a sentence for arithmetical, technical, or other clear error, or for the movant's substantial assistance.  Fed. Crim. R. P. 35.

[4] In *Johnson*, the Supreme Court invalidated the residual clause in 18 U.S.C. § 924(e)(2) of the Armed Career Criminal Act ("ACCA") as unconstitutionally vague.  The ACCA provides that if a person who is convicted under 18 U.S.C. § 922(g) has three or more previous convictions for a "serious drug offense" or a "violent felony," his prison term is increased from up to ten years of imprisonment (set forth in § 924(a)(2)) to a minimum of fifteen years and a maximum of life.  *See* 18 U.S.C. § 924(e)(1).  The statute defines a "violent felony" as "burglary, arson, or extortion, or involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*."  18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).  It is the words at the end of the definition, italicized previously, that are known as the ACCA's residual clause, *Johnson*, 135

3

voluntary since his attorney allegedly threatened and coerced him into entering it. (Doc. 156).

II.    Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (internal quotation marks and citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

---

S. Ct. at 2555-56, and which the Supreme Court found unconstitutionally vague. *Id.* at 2557, 2563.

4

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).   Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989).  As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims.  Thus, no evidentiary hearing is required.

III.   <u>Analysis</u>

A.   <u>The Motion to Vacate is Untimely.</u>

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal prisoners must file a 28 U.S.C. § 2255 motion to vacate within one year of the latest of four specified events:

(1) the date on which the judgment of conviction becomes final;

5

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In this case, the event governing the one-year limitation period is the date Movant's convictions and sentences became final.  Movant was sentenced on January 7, 2015, and he had fourteen (14) days from that date to file an appeal. *See* Fed. R. App. P. 4(b)(1)(A).  Having not filed an appeal, Movant's convictions became final on January 21, 2015, and Movant had until January 21, 2016, to file a § 2255 motion.  The instant motion, filed on March 9, 2016, is therefore untimely.[5]

---

[5] Although the one-year limitation period is subject to equitable tolling, *Holland v. Florida*, 560 U.S. 631, 645 (2010), Movant does not present any facts indicating that he seeks equitable tolling or any extraordinary circumstances such that equitable tolling would apply.

6

B.      Movant's Sentence Is Not Encompassed Within *Johnson*'s Holding.

In Movant's amended § 2255 motion, he first appears to argue that his sentences were based upon the ACCA's residual clause (*i.e.*, 18 U.S.C. § 924(e)) that the Supreme Court found unconstitutional in *Johnson*. (*See* Doc. 166 at 1) ("The Petitioner hereby avers that the Supreme Court of the United States recently determined that convictions, such as the Petitioners [sic], based exclusively on conduct encompassed by a statutes [sic] "residual clause", rather than its enumerated offenses, is unconstitutionally vague."). Movant, however, was not sentenced under § 924(e) invalidated by *Johnson*; rather, Movant was sentenced under 18 U.S.C. § 924(c).

To the degree that Movant argues that this Court should extend the *Johnson* decision to the residual clause of 18 U.S.C. § 924(c) because the statute's definition of a "crime of violence" contains similar language as § 924(e)'s residual clause held unconstitutionally vague in *Johnson*, as discussed previously herein in footnote 2, *supra*, that part of the residual clause of the ACCA that the Supreme Court found unconstitutionally vague defined a violent felony as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii).

7

Under § 924(c), a crime of violence is defined as an offense that is a felony and:

(A)    has an element the use, attempted use, or threatened use of physical force against a person or property of another; or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The first definition, or § 924(c)(3)(A), is known as the "use of force" clause, whereas § 924(c)(3)(B) is known as the residual clause of this statute. *In re Colon*, 826 F.3d 1301, 1302 (11th Cir. 2016). Although the Supreme Court in *Johnson* invalidated § 924(e)'s residual clause, "the law is unsettled" as to whether the ruling in *Johnson* extends to § 924(c)(3)'s residual clause and the Eleventh Circuit has not decided that question.  *In re Colon*, 826 F.3d at 1304 (quoting *In re Pinder*, 824 F. 3d 977, 978 (11th Cir. 2016)); *see also In re Sams*, __ F.3d __, 2016 WL 3997213, at *3 (11th Cir. July 26, 2016) ("We recently recognized that it is an open question whether *Johnson* applies to the residual clause set out in 18 U.S.C. § 924(c)(3)(B)."); *In re Hines*, 824 F.3d 1334, 1336 (11th Cir. 2016) ("As noted, *Johnson* rendered the residual clause of § 924(e) invalid.  It spoke not at all about the validity of the definition of a crime of

8

violence found in § 924(c)(3)(B).  Further, our Court has not held that *Johnson* invalidates § 924(c)(3)(B).").  Notably, the Supreme Court in *Johnson* did not address § 924(c)(3)(B)'s definition of a crime of violence, and the language in that residual clause is somewhat different than the language found to be unconstitutionally vague in the ACCA.  *See In re Hines*, 824 F.3d at 1336 n.3 ("Section 924(c)(3)(B) is similar, but not identical, to the language of the ACCA residual clause invalidated by the Supreme Court in *Johnson*."); *In re Colon*, 826 at 1304 ("[W]e note that *Johnson* did not address the definition for 'crime of violence' under § 924(c)(3), and, as shown above, the ACCA residual clause and the § 924(c)(3)(B) residual clause have somewhat different language.").

Here, the factual basis for the plea – to which Movant agreed and the Court adopted – provided, *inter alia*, that Movant and his co-defendant approached a postal employee while Movant was holding a loaded pistol, Movant told the postal employee to freeze, although the postal employee raised his arms up in fear Movant shot him in the torso causing his near-death, and Movant and his co-defendant bound him, took his cell phone, and stole his postal truck containing approximately $13,000.00 and other federal property. (Doc. 103 at 19-23).  As the Eleventh Circuit has concluded in a similar case, even if *Johnson* were to apply to

9

§ 924(c)(3)(B)'s residual clause, this companion conviction for armed postal robbery pursuant to 18 U.S.C. § 2114(a) clearly qualifies as a crime of violence under § 924(c)(3)(A)'s "use of force" clause. *See In re Watt*, 829 F.3d 1287, 1289-90 (11th Cir. 2016) (holding that *Johnson* did not invalidate the movant's firearm conviction under § 924(c) because his companion conviction for assaulting a postal employee under 18 U.S.C. § 2114(a) 'indisputably describes a crime of violence[.]'") (quoting *United States v. Dowd*, 451 F.3d 1244, 1251 (11th Cir. 2006)); *accord, Morrow v. United States*, Nos. 4:04-CR-29-TRM-SKL-2, 4:16-CV-80-TRM, 2016 WL 4146125, at *1 (E.D. Tenn. Aug. 3, 2016) ("Petitioner's conviction, which by definition involves the assault, robbery, or attempted robbery of a person having lawful charge, control, or custody of mail matter, money, or other property of the United States, 18 U.S.C. § 2114(a), categorically falls within the scope of [the use of force] provision."). *Compare In re Hines*, 824 F.3d at 1337 ("Even were we to extrapolate from the *Johnson* holding a conclusion that § 924(c)(3)(B) was also unconstitutional, it would not help *Hines* because his § 924(c) conviction . . . was explicitly based on his companion . . . conviction for armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d). And a conviction for armed robbery clearly meets the requirement for an underlying

10

felony offense, set forth in § 924(c)(3)(A), which requires the underlying offense to include as an element, 'the use, attempted use, or threatened use of physical force against the person or property of another.'"); *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016) (finding that aiding and abetting a Hobbs Act robbery conviction qualifies as a crime of violence under the use of force clause in § 924(c)(3)(A) and thus the movant's § 924(c) sentence would be valid even if *Johnson* makes the § 924(c)(3)(B) residual clause unconstitutional).  Finally, because *Johnson* is inapplicable, Movant's amended claim based on *Johnson* also is untimely.[6]

C.    Movant Entered Into His Plea Knowingly And Voluntarily.

Although the appellate waiver in Movant's plea agreement precludes both direct and collateral review of both his sentences and convictions, an appellate waiver does not bar claims for ineffective assistance of counsel relating to the plea agreement or waiver, or claims challenging the voluntariness of the plea. *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007); *Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005).  Thus, the undersigned must review

_____

[6] Because the Court finds that Movant's convictions are not encompassed within the *Johnson* decision, the Court does not analyze whether this particular claim is barred by Movant's appellate waiver or is procedurally defaulted.

11

Movant's claim that his plea was involuntary because his attorney allegedly coerced him into entering the plea.

It is well settled that there is a strong presumption that statements made during the plea colloquy are true. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Anderson*, 384 F. App'x 863, 865 (11th Cir. 2010) ("There is a strong presumption that statements made during a plea colloquy are true."); *accord, United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008); *Patel*, 252 F. App'x at 974. Where, as here, a Movant's claim of ineffective assistance of counsel is in direct conflict with his statements under oath, he has a strong burden to show that his statements under oath were false. *Patel*, 252 F. App'x at 974-75. Movant, however, has not met this burden.

Movant claims that: he entered into the plea agreement "under duress;" he was "threatened" by counsel; his responses were "coached;" he did not understand the Rule 11 colloquy; he did not know of or understand the appellate waiver; and he never admitted to the crimes with which he was charged such that there was no factual basis for his plea, are explicitly contradicted by his sworn testimony at the

12

plea hearing. (Doc. 166 at 4-11). And Movant's claims that counsel forced him into entering his plea are vague at best.

At the beginning of the plea hearing, Judge Thrash asked Movant to let the court know if he did not understand anything asked of him, to which Movant agreed. (Doc. 3). The Government then described the terms of the plea agreement, with which Movant also agreed. (Doc. 103 at 7-11). Thereafter, Movant swore that: nobody forced or coerced him to plead guilty; no one promised him anything other than what was contained in the written plea agreement; no one advised him not to tell the complete truth in court; he had sufficient time to think about it and discuss the matter fully with his attorney; and he was satisfied with his attorney's representation. (Doc. 103 at 10-12). Additionally, Movant's sworn statements indicate that Movant understood that the maximum sentence he faced was up to twenty-five years of imprisonment for armed postal robbery and a mandatory minimum sentence of a consecutive ten years to a maximum of life imprisonment for discharging a firearm during a crime of violence, that the Court has the authority to impose a more severe sentence than the calculated guideline range, and that he could not withdraw his plea even if he received a more severe sentence. (*Id.* at 14-19). Finally, the Court specifically questioned Movant about the

13

appellate waiver contained in the plea agreement, and Movant swore that he gave up his appellate rights of his own free will, no one forced or threatened him to give up his appellate rights, and no on promised him anything to cause him to give up his appellate rights.  (*Id.* at 18-20).

Finally, Judge Thrash asked the Government to summarize the facts of the case, and told Movant to "listen very carefully to what [the Assistant U.S. Attorney ("AUSA")] has to say, because when he finishes, I'm then going to ask you if there is anything that he said about the facts of the case that you disagree with."  (*Id.* at 103).  The Government then summarized the facts as follows:

> Your Honor, if the Government had to present this evidence at trial, we would prove the following.  That on December 20th, 2013, the United States Postal Service Highway Contract Route Driver, Troy Fagg, identified as the initials T.F. in the indictment, began his routine pick-up schedule for that evening, which included stopping at multiple postal – post offices and then an – ultimately culminated at the final post office in Conley, Georgia.  The shooting and robbery at incident in this case took place in Conley, Georgia on December 20th, 2013.
>
> At the time T.F. was driving a 2014 Freightliner box-styled truck.  T.F. arrived at the post office in Conley at approximately 7:10 p.m.  T.F. unlocked the entry gate to the back door of the Conley Post Office and backed up the truck to the dock in order to receive the deliveries for the truck and the parcels.

14

As T.F. was about to lift the back door of the truck, he was approached by two men, [Movant] and Kendrick Watkins, two of the defendants in this case. [Movant] pointed a loaded firearm at T.F. and told him to freeze.  T.F. raised his arms in fear. [Movant] fired the firearm [and] struck T.F. in the torso nearly killing him.

[Movant] and Watkins, aided and abetted by each other, took the key to the postal truck from T.F., tied T.F.'s feet together with plastic zip ties so that he could not run, and took T.F.'s cell phone so that he could not call for help.  Watkins and [Movant] drove away in the postal truck which contained a safe containing hundreds of pieces of mail, postal remittances, including U.S. currency totaling $13,683, and other federal property.

(Doc. 103 at 19-22).  The following exchange then occurred:

| THE COURT: | Mr. Jackson, is there anything that [the AUSA] said about the facts of the case that you disagree with? |
|---|---|
| MOVANT: | No, sir. |
| THE COURT: | And are you in fact guilty of the offense alleged in Count Two of the indictment – |
| MOVANT: | Yes, sir. |
| THE COURT: | – of committing an armed postal robbery? |
| MOVANT: | Yes, sir. |
| THE COURT: | And are you in fact guilty of the offense alleged in Count Three of the indictment of discharging a firearm in the commission of the armed postal robbery? |
| MOVANT: | Yes, sir. |

15

(Doc. 103 at 22).  Judge Thrash then asked Movant if there was anything he had said or if there were any questions he had asked that Movant did not understand or that Movant wished for him to clarify, to which Movant answered, "No, sir." (*Id.*).  Judge Thrash then made the following findings regarding the guilty plea:

> At this time I find the defendant understands the charges against him and the consequences of his guilty plea.
>
> I have observed the defendant during this proceeding and he does not appear to be – appear to me to be under the influence of any substance which might affect his judgment or his actions in any manner.
>
> I find that the offer of the plea of guilty of the defendant to Counts Two and Three of the indictment has a factual basis.  It is free of any coercive influence of any kind.  It is voluntarily made with full knowledge of the charges against him and the consequences of his guilty plea.
>
> I find that the defendant is competent to understand these proceedings and to enter a knowing plea of guilty.
>
> I find that there have been no promises of any kind made to him by anyone except as incorporated in the plea agreement set out in open court.

(*Id.* at 22-23).

Movant's vague allegations of coercion do not come close to overcoming the strong presumption of the veracity of his sworn statements during the plea

16

hearing upon which the Court's findings were based.  *See United States v. Palacios*, 516 F. App'x 734, 737 (11th Cir. 2013) (finding that the movant did not overcome the presumption of truth during the plea colloquy where after the fact he claimed that he did not have the requisite knowledge for money laundering, because during the plea colloquy he did not object to the government's proffer and explicitly stated that the conduct and knowledge ascribed to him were accurate); *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (noting that testimony at a plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made."); *Perez v. United States*, Nos. 3:14-CV-1213-N (BH), 3:12-CR-0133-N (01), 2016 WL 4276006, at *4 (N.D. Tex. May 31, 2016) (holding that the movant's vague and conclusory statements that counsel coerced him into signing a plea agreement in which he waived rights he did not want to waive, such as the right to appeal, failed to overcome the presumption of veracity of his sworn statements in court); *United States v. Farah*, Criminal No. 11-87 (MJD/JJK), Civil No. 13-730 (MJD), 2013 WL 4519345, at *3 (D. Minn. Aug. 26, 2013) ("Petitioner's belated and barebones claim that she did not commit

17

the crimes to which she pled guilty is insufficient to overcome the strong presumption of truth of her prior statements made during the guilty plea hearing. . . ."); *Paulino v. United States*, 964 F. Supp. 119, 125 n.2 (S.D. N.Y. 1997) (rejecting the movant's habeas claim that he did not carry a firearm but told the court that he did because of advice from his then-counsel, where his statements under oath at the plea colloquy indicated the contrary).   Accordingly, Movant has not demonstrated that his plea was anything other than knowing and voluntary.

  D. <u>The Appellate Waiver Is Valid And Enforceable And Prohibits Movant From Raising The Remainder Of His Claims.</u>

  Because Movant knowingly and voluntarily entered into the plea agreement which contained the appellate waiver, that appellate waiver is valid and enforceable.  *See United States v. Johnson*, 603 F. App'x 867, 872 (11th Cir. 2015); *United States v. Santiesteban*, 587 F. App'x 548, 551 (11th Cir. 2014). "[O]ne of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993) (citations omitted). In order to prevail in an argument to enforce a waiver, the Government must show that either "(1) 'the district court questioned the [movant]' about the waiver; or (2)

the record makes clear 'that the [movant] otherwise understood the full significance of the waiver.'" *United States v. Wilson*, 445 F. App'x 203, 207 (11th Cir. 2011) (quoting *Bushert*, 997 F.2d at 1351); *Ramos*, 433 F. App'x at 895-96; *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). In this case, the Government has demonstrated both.

The appellate waiver contained in the Plea Agreement provides as follows:

### Limited Waiver of Appeal

31. LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or variance above the sentencing guideline range as calculated by the district court. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 91, Attach. 1 at 16).

The Court specifically questioned Movant about the appellate waiver, asking him if he understood that he was giving up his right to appeal and to file collateral relief, and Movant stated that he understood. (Doc. 103 at 18-19). It is therefore

19

clear from the record that Movant understood the significance of the appellate waiver, and he has not produced any evidence to challenge the veracity of his sworn testimony.   Consequently, Movant's appellate waiver is valid and enforceable. *See Demello v. United States*, 623 F. App'x 969, 973-74 (11th Cir. 2015) (holding collateral attack waiver valid and enforceable where the court specifically questioned the movant about the waiver and told him he was waiving his right to both an appeal and post-conviction proceeding, the movant affirmed that he understood the terms of the waiver and had agreed to those terms, when asked whether he had any questions he responded that he had none, and the terms of the plea agreement and representations the movant made therein further showed that he understood the significance of the waiver); *United States v. Steele*, 168 F. App'x 897, 900 (11th Cir. 2006) (finding appellate waiver valid where the court specifically questioned the movant about the waiver provision); *United States v. Montes*, 151 F. App'x 846, 853 (11th Cir. 2005) (finding appellate waiver valid where judge reviewed the waiver with the movant and he agreed that he was freely and voluntarily waiving his right to appeal his sentence); *Bushert*, 997 F.2d. at 1350-51 ("One of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up

20

that right.'") (citations omitted).  Because the remainder of Movant's claims do not involve any of the exceptions contained in the waiver, Movant is barred from raising them.[7]

> D.    All Of Movant's Remaining Claims Also Are Procedurally Defaulted.

The Government argues that all of Movant's claims are also procedurally defaulted.  The undersigned agrees.

The procedural default doctrine reflects the "general rule" that "claims not raised on direct appeal may not be raised on collateral review[.]" *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Magluta v. United States*, __ F. App'x __, 2016 WL 4524462, at *5 (11th Cir. Aug. 30, 2016).  To adequately preserve a claim, a movant must raise it both before the trial court (whether by motion, objection, or otherwise), and also on direct appeal.  *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986); *see also McKay v. United States*, 657 F.3d 1190, 1196 (11th

---

[7] The undersigned also notes that even if this § 2255 motion was not untimely or barred by the appellate waiver, Movant was not sentenced above the statutory maximum for either of his convictions, as Movant was sentenced to:  (1) 108 months for armed robbery of a postal employee (maximum sentence of twenty-five years, or 300 months, *see* 18 U.S.C. § 2114(a)); and (2) the mandatory minimum of 120 consecutive months for discharging a firearm during a crime of violence (maximum penalty of life imprisonment, *see United States v. Dougherty*, 632 F. App'x 993, 996 (11th Cir. 2015)).

21

Cir. 2011) (stating that in order to avoid a procedural default, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.") (internal quotation marks and citations omitted).  A movant can overcome a procedural default by showing cause and actual prejudice, or that he is actually innocent of the charges.  *See Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2005); *Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004) (per curiam).

Movant has not established cause or actual prejudice for the failure to raise these claims on appeal, and he certainly has provided no evidence, let alone evidence "so strong that a court cannot have confidence in the outcome[,]" *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1936 (2013) (internal quotation marks and citations omitted), to demonstrate that he is actually innocent. Indeed, the evidence in the record would belie any such claim, since he admitted to the agents arresting him and during the plea colloquy that he shot the postal worker in the course of robbing him.  (Doc. 103 at 14, 16; PSR ¶ 27).  Thus, Movant has failed to overcome the procedural default of his claims.

22

IV.    Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Movant Charles Jackson's motion to vacate sentence [Docs. 156, 166] be **DENIED**.

V.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."   *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.*  "The question is the debatability of the underlying constitutional

23

claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).  In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determinations that: the motion is untimely, his sentencing claim is not encompassed within the *Johnson* decision and thus also is untimely, he knowingly and voluntarily entered into his plea, and the remainder of his claims are barred by the appellate waiver and are procedurally defaulted.  *See Slack*, 529 U.S. at 484.

24

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 25th day of October, 2016.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)